WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Brian Fredrick Greenfield, | No. CV-15-02199-PHX-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Brian Fredrick Greenfield's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff alleges disability beginning on November 15, 2011.  This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.  Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.  (Doc. 17).

After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 16, 21), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error.

## I. LEGAL STANDARDS

### A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act also provides for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments,

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

disability benefits are denied at this step.  Otherwise, the ALJ proceeds to step three.

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:**  Does the impairment prevent the claimant from performing work which the claimant performed in the past?  If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis.   20 C.F.R. §§ 404.1520(f), 416.920(f).  Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience?  The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g).   Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

**B.  Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  Although "substantial

---

[2] *Parra*, 481 F.3d at 746.

evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff, who was born in 1956, has worked as an automobile mechanic. (A.R. 44-45, 59). In 2012, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income benefits. (A.R. 214-15, 216-24). The applications allege that on January 1, 2006, Plaintiff became unable to

work due to the following impairments: (i) arthritis; (ii) back problems; (iii) high blood pressure; (iv) diabetes; and (v) depression.  (A.R. 59, 79).  Social Security denied both applications on October 19, 2012.  (A.R. 150-56).  On June 12, 2013, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's applications.  (A.R. 158-63).  Plaintiff then requested a hearing before an ALJ.  (A.R. 164).  At the administrative hearing, Plaintiff amended the alleged disability onset date to November 15, 2011.  (A.R. 23, 54).  On April 24, 2014, the ALJ who conducted the hearing issued a decision finding that Plaintiff has not been under a disability as defined in the Social Security Act from January 1, 2006 through the date of the decision.  (A.R. 23-34).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner.  (A.R. 1-6, 18-19).  On November 2, 2015, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B.  The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1.  Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 15, 2011.  (A.R. 25).  Neither party disputes this determination.

#### 2.  Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: (i) degenerative disc disease of the lumbar spine; (ii) hypertension; (iii) diabetes mellitus; and (iv) depression (A.R. 25).  The ALJ's step two determination is undisputed.

#### 3.  Step Three: Presence of Listed Impairment(s)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 of the Social Security regulations.  (A.R. 25-27).  Neither party disputes the ALJ's determination at this step.

### 4.  Step Four:  Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform medium exertional work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that:

> [Plaintiff] is limited to simple, unskilled work.  [Plaintiff] has the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting.

(A.R. 27).  After considering Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform his past relevant work as an automobile mechanic.  (A.R. 33).  Although neither party challenges the ALJ's determination that Plaintiff is unable perform his past work, Plaintiff asserts that the ALJ's RFC assessment does not account for all of Plaintiff's limitations.  (Doc. 16 at 9-16).

### 5.  Step Five: Capacity to Perform Other Work

At the final step, the ALJ found that Plaintiff is able to perform other jobs existing in significant numbers in the national economy.  (A.R. 33-34).  In making this finding, the ALJ relied on the Medical-Vocational Guidelines (the "Grids").  Plaintiff argues that the ALJ erred at Step Five by failing to consult a Vocational Expert ("VE") when determining that Plaintiff can perform other work.  (Doc. 16 at 20).

### C.  Plaintiff's Challenge to the ALJ's RFC Assessment

#### 1.  The ALJ Did Not Improperly Discount the Opinions of Examining Psychologist Dr. David Young

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ must provide clear and convincing reasons that

are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id*. at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence.

On September 13, 2012, consulting psychologist Dr. David Young examined Plaintiff. (A.R. 644-49). Dr. Young opined that Plaintiff "has adequate ability to understand simple direction," but "has serious difficulties with regard to concentrating and persisting on tasks at hand." (A.R. 648). Dr. Young also opined that Plaintiff is easily discouraged, is "quite withdrawn socially," "gets irritated easily," "gets very impatient," and "will need some help with regard to maintaining standards of neatness." (A.R. 649). Dr. Young concluded that Plaintiff "has little ability to work for extended periods of time" and "is likely to have difficulty maintaining responsibilities on the job." (A.R. 648-49).

The ALJ gave Dr. Young's opinions little weight. (A.R. 32). Because Dr. Young's opinions were contradicted by another acceptable medical source,[3] the Court must evaluate whether the ALJ's reasons for discounting Dr. Young's opinions are specific and legitimate.

The ALJ gave two reasons for discounting Dr. Young's opinions. First, the ALJ found that Dr. Young's opinions are not supported by Dr. Young's objective findings from the examination. (A.R. 32). The ALJ did not unreasonably state that Dr. Young's objective findings were generally within normal limits. (*Id.*). For instance, Dr. Young observed that Plaintiff "had good immediate memory of words read to him. He had no difficulty recalling the same three words after a short delay. He had no difficulty counting backwards x7." (A.R. 644). Dr. Young also noted that Plaintiff spoke clearly, was cooperative, was alert, his "attention was good," and "[h]is thought processes were

---

[3] Dr. Young's opinions were contradicted by Drs. Diane Kogut and Lynette M., who opined that Plaintiff could perform unskilled work. (A.R. 75, 119).

logical and goal directed." (A.R. 645). Although Dr. Young also stated that Plaintiff's "affect was flat and blunted," his "[m]ood was depressed and anxious," and "[h]e sounded impatient and irritable," it is well-settled that an ALJ, not the Court, is responsible for resolving conflicts and ambiguity in the evidence. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court does not find that the ALJ unreasonably concluded that Dr. Young's opinions are unsupported by Dr. Young's examination findings. The ALJ's first reason for discounting Dr. Young's opinions is specific and legitimate and is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ also found that Dr. Young's observations are inconsistent with the observations of other treating sources. (A.R. 32). For instance, the ALJ correctly recounted that treating physician Dr. Russell Hissock noted in June 2013 that Plaintiff had good judgment, was oriented to time, place, and person, had a normal mood, was active and alert, and had normal recent and remote memory. (A.R. 32, 670). The Court finds that the ALJ's finding that Dr. Young's opinions are inconsistent with the record is a valid reason for discounting the opinions and is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a physician's opinion that is inconsistent with the record).

Finally, the ALJ stated that "it appears Dr. Young primarily relied upon the claimant's own subjective statements in determining the claimant's mental functional capacity." (A.R. 32). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041; *see also Tonapetyan*, 242 F.3d at 1149. Dr. Young wrote numerous statements that reflect Plaintiff's own account of his symptoms, such as Plaintiff "reports he is having some problems remembering things," Plaintiff "has

had [anxiety attacks] a few times by his report," and Plaintiff says "he is frustrated . . . ." (A.R. 645).  The ALJ's conclusion that Dr. Young's opinions are largely premised on Plaintiff's subjective complaints is not unreasonable.  As explained in Section II(C)(3) below, the ALJ did not improperly discount Plaintiff's testimony.  The Court finds that the ALJ's final reason for giving Dr. Young's opinions little weight is specific and legitimate and is supported by substantial evidence.

In light of the Court's finding that the ALJ did not improperly discount Dr. Young's opinions, the Court does not find persuasive Plaintiff's argument that the ALJ's RFC assessment fails to account for moderate limitations in concentration, persistence, and pace.[4]  (Doc. 16 at 9-14).

## 2. Alleged Limitations Regarding Social Functioning

Plaintiff argues that the ALJ failed to incorporate limitations related to Plaintiff's social functioning.  (Doc. 16 at 14).  In support of this argument, Plaintiff cites the opinion of non-examining psychological consultant Dr. Lynette M., who opined that Plaintiff was "markedly limited" in the abilities to understand, remember, and carry out detailed instructions and to interact appropriately with the general public.  (A.R. 117-18). However, Dr. M. opined that Plaintiff was "not significantly limited" in the abilities to understand, remember, and carry out very short and simple instructions and to remember locations and work-like procedures.  (A.R. 117).  Dr. M. also opined that Plaintiff had no significant limitations in abilities to (i) maintain attention and concentration for extended periods; (ii) sustain an ordinary routine without special supervision; (iii) work in coordination with or in proximity to others without being distracted by them; (iv) make

---

[4] While the ALJ found at Step Three that Plaintiff has a moderate limitation in concentration, persistence, or pace, the ALJ found that Plaintiff "still has the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings despite his alleged mental impairment."  (A.R. 26).  This limitation is captured by the ALJ's RFC assessment, which restricts Plaintiff to simple, unskilled work.  *See, e.g.*, *Sabin v. Astrue*, 337 F. App'x 617, 620 (9th Cir. 2009) ("The ALJ determined the end result of Sabin's moderate difficulties as to concentration, persistence, or pace was that she could do simple and repetitive tasks on a consistent basis.").

simple work-related decisions; (v) complete a normal workday and workweek without interruptions from psychologically based symptoms; (vi) accept instructions and respond appropriately to criticism from supervisors; and (vii) get along with coworkers or peers. (A.R. 117-18).

Dr. M. concluded that Plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work" and assessed that Plaintiff could perform unskilled work.  (A.R. 119).  Plaintiff argues that the ALJ improperly rejected Dr. M.'s opinion that Plaintiff is only able to perform work that involves limited interaction with the general public.  (Doc. 16 at 14-16).

The ALJ limited Plaintiff to "simple, unskilled" work.  (A.R. 27).  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  Social Security Ruling 85-15 ("SSR 85-15"), 1985 WL 56857, at *4 (1985); *see also* 20 C.F.R. § 416.968(a).  "These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis."  SSR 85-15, 1985 WL 56857, at *4.  By limiting Plaintiff to "simple, unskilled work," the ALJ's RFC assessment adequately captures Dr. M.'s opinion that Plaintiff is limited to perform work where interpersonal contact is incidental to work performed.  *See, e.g.*, *Rogers v. Comm'r of Soc. Sec.*, No. 09–CV–01972–JLT, 2011 WL 445047 (E.D. Cal. Jan. 25, 2011) (stating that "unskilled work accommodates a need for limited contact with the general public"), *aff'd*, 490 Fed. Appx. 15 (9th Cir. Jul. 20, 2012) (holding a residual functional capacity for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for such limitations).  Therefore, any error in failing to include in the RFC assessment a limitation with respect to public interaction is harmless.  *See*

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (to extent ALJ's RFC finding erroneously omitted claimant's postural limitations, any error was harmless since sedentary jobs required infrequent stooping, balancing, crouching, or climbing).

### 3. The ALJ Provided Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony regarding his subjective symptoms. When evaluating the credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The plaintiff does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a plaintiff must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a plaintiff meets the first step, and there is no evidence of malingering, the ALJ can only reject a plaintiff's testimony about the severity of his or her symptoms by offering specific, clear, and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the plaintiff's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a plaintiff's credibility, the ALJ can consider many factors including: a plaintiff's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the plaintiff's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition, although the lack of medical evidence cannot form the sole basis for discounting pain

testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *See* 20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005).

In discounting Plaintiff's testimony, the ALJ stated that Plaintiff has received "routine, conservative treatment on an infrequent basis for the alleged impairments." (A.R. 28). Generally, "[e]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra,* 481 F.3d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). However, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn*, 495 F.3d at 638 (quoting *Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995)) (alteration in original).

Here, the record does not reflect that Plaintiff's impairments required more than conservative treatment. For example, in a September 2013 treatment note, Dr. Russell Hiscock stated "labs looked pretty good considering [Plaintiff] had not seen a doctor for several years and had not have [sic] his medications. Generally doing well today. Complaining of some hand pain. Otherwise voices no acute complaints, issues, or concerns today and denies any other interim changes in his health status." (A.R. 657).

Plaintiff is ultimately responsible for providing the evidence to be used in making the RFC finding. *Andrews*, 53 F.3d at 1040 (a claimant bears the burden of proving entitlement to disability benefits); *Meanel*, 172 F.3d at 1113 (claimant carries burden to present "complete and detailed objective medical reports" of his or her condition from licensed medical professionals). The Court finds that the ALJ's conclusion that Plaintiff

has received minimal and conservative medical treatment is supported by substantial evidence in the record. Because an ALJ may infer that pain is not disabling if a claimant seeks only minimal, conservative treatment, the ALJ did not err in concluding that the conservative and infrequent treatment Plaintiff has received is inconsistent with Plaintiff's allegations regarding the severity of his symptoms. (A.R. 28). *See Burch*, 400 F.3d at 681 (finding that if claimant's complaints of back pain was "not severe enough to motivate" the claimant to seek specialized treatment for the back pain (e.g. chiropractor visits, physical therapy, etc.), it "is powerful evidence" regarding the extent to which the claimant was in pain, even if the claimant did seek some treatment).

The ALJ also discounted Plaintiff's testimony because "[t]he positive objective clinical and diagnostic finding since the amended onset" does not support more restrictive functional limitations than those contained in the assessed RFC. (A.R. 28). Because the ALJ did not rely solely on the lack of supporting medical evidence in rejecting Plaintiff's testimony, the ALJ properly considered whether the objective medical evidence corroborates Plaintiff's claimed limitations. *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

Substantial evidence supports the ALJ's finding that Plaintiff's symptom testimony is inconsistent with the objective evidence. For instance, the ALJ correctly recounted the September 2012 findings by evaluating physician William Chaffee, M.D., who opined that Plaintiff could perform a range of heavy work despite Plaintiff's diagnoses of Type II diabetes, hypertension, diabetic peripheral neuropathy, bilateral Dupuytren's contracture, chronic back pain, and possible chronic pulmonary fibroses. (A.R. 29, 628-33). The ALJ also correctly recounted medical records that indicate that Plaintiff's condition was generally unremarkable, such as a September 2013 treatment

note indicating that Plaintiff had normal motor strength, normal tone, and normal movement of all extremities.  (A.R. 29-30, 658).

For the above reasons, the Court finds that the ALJ provided specific, clear, and convincing reasons supported by substantial evidence when the ALJ discounted Plaintiff's testimony regarding his symptoms.

### 4. The ALJ Did Not Err at Step Five by Relying on the Grids

At the fifth step of the disability analysis, the burden rests on the Commissioner to show that the claimant can engage in work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010).  In determining whether the claimant retains the ability to perform other work, an ALJ may refer to the Grids in certain cases. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00; *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576-77 (9th Cir. 1988).  The Grids are divided into three job categories: (i) sedentary work, (ii) light work, and (iii) medium work.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00.  The Grids calculate whether or not the claimant is disabled based on the claimant's exertional physical ability, age, education, and work experience.  As such, the Grids are intended to streamline the administrative process and encourage uniform treatment of claims.  *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing the creation and purpose of the Grids).

However, an ALJ should rely on the Grids "only when the [G]rids accurately and completely describe the claimant's abilities and limitations."  *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985); *see also Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (noting that the Grids "should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the [G]rids" and that a VE should be consulted where limitations "significantly limit the range of work" a person can perform) (citation omitted).  Use of the Grids is inappropriate where a claimant has non-exertional limitations that restrict the claimant's ability to perform the full range of work within a job category.  *Burkhart*, 856 F.2d at 1340-41.  Examples of

non-exertional limitations include those "mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations."  *Desrosiers*, 846 F.2d at 579.

The presence of a non-exertional limitation does not automatically preclude application of the Grids.  *See id.* at 577.  Rather, a non-exertional limitation must be "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Moreover, a finding that a non-exertional impairment is severe at step two does not necessarily mean it is "sufficiently severe" to significantly limit the range of work permitted by a claimant's exertional limitation.  As the Ninth Circuit has explained, the determinations at steps two and five require different levels of severity of limitations, "otherwise the two steps would collapse and a [VE] would be required in every case in which a step-two determination of severity is made."  *Id*.

Here, Plaintiff argues that the ALJ erred by relying on the Grids because "the evidence, including the opinions from Dr. Young and [Dr. M.], indicates that [Plaintiff[ had significant and distinct functional limitations which would impact his ability to perform jobs in the national economy."  (Doc. 16 at 20).  However, as explained above, the ALJ did not err in discounting Dr. Young's opinion.  As also explained above, any error in omitting from the RFC assessment Dr. M.'s opinion that Plaintiff should be restricted to jobs that have limited interaction with the general public is harmless.

Because substantial evidence supports the ALJ's finding that Plaintiff does not possess non-exertional limitations that are sufficiently severe to limit Plaintiff's ability to perform unskilled work, the ALJ did not err by exclusively relying on the Grids at Step Five of the disability analysis.  *See Hoopai*, 499 F.3d at 1077 (stating "we have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation" and holding that substantial evidence supported an ALJ's conclusion that a claimant's depression was not a sufficiently severe non-exertional limitation that

prohibited the ALJ's reliance on the Grids without the assistance of a VE). The Court therefore finds that the Commissioner satisfied the burden at Step Five in showing that Plaintiff can perform other work in the national economy that exists in significant numbers.

### III. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is free from reversible error. Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security. The Clerk of Court shall enter judgment accordingly.

Dated this 6th day of March, 2017.

_____

Eileen S. Willett
United States Magistrate Judge